Francis **PIECHOSKI**, Appellant,

v.

**GRACE LINES, INC.**

No. 17282.

United States Court of Appeals
Third Circuit.

Argued Feb. 18, 1969.

Decided April 8, 1969.

Joseph P. Briglia, Fine, Staud & Silverman, Philadelphia, Pa., (Aloysius J. Staud, Philadelphia, Pa., on the brief), for appellant.

Clayton H. Thomas, Jr., Marshall, Dennehey & Warner, Philadelphia, Pa., for appellee.

Before VAN DUSEN, ALDISERT and STAHL, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

■ This is a longshoreman's appeal from the denial of his alternative motions for judgment n. o. v. or a new trial following a judgment entered against him and in favor of the defendant, Grace Lines, Inc., after a jury verdict in a maritime personal injury action tried on theories of negligence and unseaworthiness. The plaintiff was injured when struck by a lanyard that was being returned to the ship by winches after it had been used, without incident, in the removal of two of three pontoon hatch coverings which protected the hatch where plaintiff was working. As the lanyard, suspended by wires, was being swung back over the ship preparatory to removing the third pontoon, it became entangled in lashings used to secure certain containers near the edge of the vessel's deck and whipped free of the lashings, striking plaintiff on the head.[1] Plaintiff's theory at trial was that the winches were defective; the container which was lashed on the inshore side of the deck should have been removed before the pontoons were taken off; and the lashings should have been removed before the operations began.[2] Each of those questions of fact was properly submitted to the jury, whose verdict was

[1.] The testimony of the winch operator was that the midship winch ran faster than usual, and jarred the rigging. He immediately tried to stop the midship winch and increase the speed of the inshore winch to prevent any damage to the rigging. This sudden movement of the gear caused the rope lanyard to become wrapped momentarily around the lashing on the inshore container. The winches continued in operation, causing the gear to swing towards the offshore side, as a result of which a rope lanyard lashed across the hatch and struck plaintiff in the head.

[2.] Plaintiff contended that the latter two factors created an unsafe condition involving negligence and unseaworthiness.

supported by adequate evidence so that there was no error in denying plaintiff's motion for judgment n. o. v.

■ Plaintiff now claims that the trial court erred in failing to charge that the stevedoring company's method of operation, uncorrected by defendant, constituted negligence and unseaworthiness. This argument fails because plaintiff did not base his claim on that theory either in his pretrial memorandum[3] or during the presentation of the evidence to the jury. Captain Wheeler, defendant's witness upon whom plaintiff has placed substantial reliance, stated, in answer to the question whether he considered the method of operation unsafe, "No. It is perfectly safe and perfectly proper to handle cargo over a deck cargo of 8 feet high. Many times a shipload of lumber will be 15 feet high * * * and you are transporting cargo over top of the deck load".[4] The District Court committed no error in failing to give general instructions that the overall method of operation might be found to be a basis of liability, since the theory underlying such an instruction would have had no support in the record. Southern Pacific Company v. Villarruel, 307 F.2d 414 (9th Cir. 1962); see, also, Atkinson v. Roth, 297 F.2d 570 (3rd Cir. 1961). The failure to follow the alleged "usual practice" to double up the hooks and hook them back into the rings was also not one of the asserted grounds of liability until the requests for charge were submitted to the trial judge.

■ On the day before the receipt of evidence was concluded, and the case was submitted to the jury, the trial judge advised counsel for plaintiff that he would not read each of his 38 points for charge to the jury, but consideration would only be given to a reasonable number of specific points (N.T. 287-8, 350-2 and 347).

Although most of the generally stated requests for charge would properly have been construed by the trial judge to refer to physical conditions existing on the ship, such as the lashings, height of the containers, length of the ropes and lanyards, etc.,[5] the following para-

3. Plaintiff's claim is stated as follows in his Pretrial Memorandum (Document 10 in C.A.35977):
"As plaintiff was standing on the deck he was struck in the head by a lanyard which had fouled around a lashing wire securing deck cargo and suddenly broke free. The accident occurred because the pontoon bridles, to which the lanyards were attached were too long, and the winches were defective. The standard practices of safety engineering were violated as were the Safety and Health Regulations for Longshoring."
At the pre-trial conference, this claim was amended to add a claim of "improper storage of cargo on top deck" (Document 16 in C.A.35977). As stated in Payne v. S. S. Nabob, 302 F.2d 803 (3rd Cir.), cert. den. 371 U.S. 870, 83 S.Ct. 136, 9 L.Ed.2d 107 (1962), at page 807:
"It has long been the law that attorneys at the pretrial stage 'owe a duty to the court and opposing counsel to make a full and fair disclosure of their views as to what the real issues at the trial will be.' [Citing cases.] It is through such disclosure at pretrial that trial prejudice can be avoided."

See, also, Valdesa Compania Naviera v. Frota Nacional de Petroleiros, 348 F.2d 33, 37-38 (3rd Cir. 1965), and cases there cited.

4. The testimony at 44a-45a, relied on by plaintiff, stated that the operation was not safe if too much power is used by the winch operator so that the hook comes in too fast, "but this is totally within the control of the man holding the winch controls." Plaintiff did not attempt to show negligence of the winch operator and the contention that a defect in the winch machinery caused the hook and lanyards to come in too fast was rejected by the jury.

5. Since those of the first 32 requests concerning liability referred to items of fault comparable to overhang of cargo, slime on the ship's rail (5), defects in equipment (10), dermatitis causing liquid leaking from cargo (11), deck cargo improperly placed (31), presence of lashing wire (32), the trial judge would not have anticipated that any other generally worded points for charge would have reference to methods of operation.

graphs 33 and 37 of the requests can be construed as a specific reference to a method of operation which the evidence might have justified the court's concluding was a possible basis of liability:

> "33. Lanyards and gear must ride free over the deck cargo when being brought aboard the ship from the pier. The lanyards and gear did not clear the deck cargo thus making the ship unseaworthy.[6]

> \*   \*   \*   \*   \*   \*

> "37. When a ship knows or should have known, that the stevedore's method of discharging its cargo does not conform to the standard of reasonable care, and thereby created a hazardous condition, the ship is negligent when it does not forbid the use of the method. Ferrante v. Swedish American Lines (3 Cir., 331 F.2d 571) (1964)."

When counsel for plaintiff was pressed to make his requests for charge specific, he made one specific reference to the request in paragraph 1, which was denied, so that it is clear that he could have objected to the failure to charge these requests (33 and 37) before, as well as after, the charge.

We have concluded that the procedure followed by the court was reasonable in the light of the limited number of issues involved in this case and the number of requests submitted.[7] See Charles A. Wright, Inc. v. F. D. Rich Co., 354 F.2d 710, 712–713 (1st Cir. 1966).

The trial judge also said prior to the closing arguments of counsel (N.T. 352):

> "When I have charged the jury I will send the jury out and if you have any objections, I want them specific and to the point, not in generalities. And I am not going to allow objections to failing to charge every point that either of you have submitted. If you want objections you will have to put them on the record specifically and to the point."

■ Plaintiff failed to take any specific exceptions to the charge. Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C., requires that a specific exception be taken. McPherson v. Hoffman, 275 F.2d 466 (6th Cir. 1960); Brown v. Moore, 247 F.2d 711, 723, 69 A.L.R.2d 288 (3rd Cir.), cert. den. 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112 (1957). In the absence of a specific exception, no appeal will lie. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719 (1943); Guest House Motor Inn, Inc. v. Duke, 384 F.2d 927 (5th Cir. 1967).

■ Although the trial judge did not grant plaintiff's counsel an opportunity to review all 38 points for charge, following the instructions to the jury, as noted above he warned counsel prior to the charge that the points were not

---

6. It is noted that this positively stated request was based on expert testimony which the jury was entitled to reject so that it was improperly phrased.

7. We note that this language is used in Mathes and Devitt, Federal Jury Practice and Instructions, § 6.02, at p. 70:

> "It is wise to limit requests for instructions. A large number of them tends to confuse rather than enlighten the jury. Very few lawsuits call for more than 4 or 5 instructions on points of law unique to the issues involved. Many lawyers submit, and some judges will give, repetitive instructions on the same point of law, although phrased in slightly different language. The lawyer reasons that repetition of his favored points of law will impress the jury. When counsel on the other side reasons

the same way, the judge who subscribes to such suggestions is no more than a talking machine repeating the same points ad nauseam. Such 'instructions by the acre' are universally condemned."

Prior to the closing arguments of counsel, the trial judge used similar language as follows:

> "Now I don't want to cut you off. You argue anything you want to the jury. That is the jury's problem, but as usual in these cases—and frankly, it gets a little tiresome to me, and all of you admiralty firms follow the same practice; I think you must run these things off by the dozens—when you make objections to my charge, if you do—I guess probably both of you will—you mention them specifically, \* \* \*."

going to be read to the jury, and counsel should be prepared to state any exceptions specifically upon completion of the charge. Counsel is entitled to an opportunity to make objections to the charge following its delivery, but the court is not required to give counsel unlimited time for such objections. We find no reversible error on this record because the court gave adequate warning that it would require specific objections to the charge, and counsel for plaintiff was not willing to make such specific objections without taking the time to go over each of his 38 requests. It is clear, of course, that the court need not give any of the requested points for charge where the charge itself has included a full statement of the applicable law, and the charge covered adequately the issues raised during the trial. E.g., Lind v. Aetna Casualty and Surety Company, 374 F.2d 377 (5th Cir. 1967).

For the foregoing reasons, denial of the motion for new trial was not error. The judgment of the District Court will be affirmed.