

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-17-1998

# Smith v. Wilkinsburg

Precedential or Non-Precedential:

Docket 97-3133

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"Smith v. Wilkinsburg" (1998). *1998 Decisions.* Paper 143.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/143

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 17, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-3133

EDWARD C. SMITH,
        Appellant

v.

BOROUGH OF WILKINSBURG

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 95-1699)

Argued October 27, 1997

Before: SLOVITER, NYGAARD and KRAVITCH,*
Circuit Judges

(Opinion Filed June 17, 1998)

Harry R. Ruprecht (Argued)
King, Ruprecht & Berman
Pittsburgh, PA 15219

 Attorney for Appellant

Thomas H.M. Hough (Argued)
Barry, Fasulo & Hough, P.C.
Pittsburgh, PA 15219

 Attorney for Appellee

_____

* Hon. Phyllis A. Kravitch, Senior United States Circuit Judge for the
Eleventh Circuit, sitting by designation.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Edward C. Smith, former Manager of the Borough of
Wilkinsburg, Pennsylvania, brought suit against the
Borough alleging that it had failed to renew his employment
contract on the basis of his age. At the close of the trial, the
district court refused his request to instruct the jury that it
could infer intentional discrimination if it disbelieved the
Borough's asserted reasons for not renewing Smith's
contract. Smith appeals from the judgment entered on the
jury's adverse verdict, and seeks a new trial, claiming that
the district court committed reversible error in omitting
that instruction.

I

Smith was hired as Borough Manager on June 5, 1989,
pursuant to a five-year employment contract. Under the
contract, Smith's employment was to be renewed for an
additional five years unless written notice was given by
either party within thirty days before or after the contract's
expiration. On March 23, 1994, a member of the Borough
Council orally informed Smith, then 61 years old, that the
Council would not be renewing his contract but that he was
welcome to reapply for the job along with other applicants.
Two weeks later, Smith, the Mayor and the Council
President signed a resolution stating that the Borough
would not be extending Smith's employment agreement and
that it would begin interviewing other applicants for the
position.

Although Smith told several council members that he was
interested in retaining his position, he did not formally
submit an application. On February 15, 1995, Thomas
Leach, who was 37 years old, was hired as the new
Borough Manager. Only after Leach was hired did Smith
apply in writing for the Borough Manager position.

Smith brought suit against the Borough alleging that his
employment contract had not been renewed on account of

2

his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. S 623 ("ADEA"). At trial, Smith produced evidence that the fiscal health of the Borough had improved markedly during his tenure. In defense of its action in failing to renew Smith's contract, the Borough elicited testimony from Council members that Smith's performance on the job had been inadequate. Smith then offered evidence that the Borough had not criticized Smith's performance at prior hearings before the Equal Employment Opportunity Commission and the Pennsylvania Commission on Human Relations and in its responses to Smith's interrogatories. Instead, the Borough explained that it did not renew Smith's contract because Smith had not timely applied for the position.1

At the court's request, the parties submitted written proposed jury instructions and objections to the court's proposed charge. Smith, citing our opinion in Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061 (3d Cir. 1996) (en banc), cert. denied, 117 S. Ct. 2532 (1997), requested that the court instruct the jury that it could infer intentional discrimination if it found the Borough's reasons for not renewing the contract to be false or not credible. Thereafter, at an in camera charge conference, Smith objected to the court's draft charge, noting that it did not include his requested instruction on pretext. The court denied Smith's request and overruled his objection, stating: "it is error for me to instruct on that. . . . for me to give a pretext instruction would be an error, simple as that." App. at 983. Smith did not renew his objection after the court delivered the charge to the jury.

The jury returned a verdict for the Borough. Smith then filed a motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure on the ground that it was error for the district court not to have given the instructions he requested. The court denied the motion and this appeal followed.

_____

1. We note, however, that in its answer to Smith's complaint, the Borough listed 18 different areas in which Smith's job performance was "not satisfactory." App. at 3-4.

II

When reviewing the propriety of a district court's charge to the jury, the scope of our review depends on whether the party challenging the charge properly preserved his or her objection before the trial court. Where the objection is properly preserved, our inquiry is whether the charge, "taken as a whole, properly apprises the jury of the issues and the applicable law." Limbach Co. v. Sheet Metal Workers Int'l Ass'n, 949 F.2d 1241, 1259 n.15 (3d Cir. 1991) (en banc). Where the objection has been waived, however, our power to review is discretionary and "should be exercised sparingly." Fashauer v. New Jersey Transit Rail Operations, 57 F.3d 1269, 1289 (3d Cir. 1995) (quoting McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 770 n.31 (3d Cir. 1990)). When we choose to exercise that discretion, we may reverse only where the error is "fundamental and highly prejudicial or if the instructions are such that the jury is without adequate guidance on a fundamental question and our failure to consider the error would result in a miscarriage of justice." Fashauer, 57 F.3d at 1289 (quoting Bereda v. Pickering Creek Indus. Park, Inc., 865 F.2d 49, 53 (3d Cir. 1989)).

The Borough has not argued that Smith waived his objection to the district court's charge. However, because the waiver issue is central to determining the scope of our review, we will not simply assume that the objection was preserved, merely because the Borough failed to raise the waiver argument.

Rule 51 of the Federal Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51. Rule 51 plays a critical role in both the trial and appellate processes. By requiring parties to object with specificity before the jury retires, the rule ensures that the district court is made aware of and given an opportunity to correct any alleged error in the charge before the jury begins its deliberations. See, e.g., Fashauer, 57 F.3d at 1288. When errors are recognized and corrected at that early stage, the burden on the courts of

appeals is diminished, fewer jury verdicts will have to be vacated and fewer cases will need to be tried a second time. See id. Unfortunately, though we have been consistent in articulating the patent purpose of Rule 51, we have not been as consistent in its application.

In Bowley v. Stotler & Co., 751 F.2d 641 (3d Cir. 1985), we stated unequivocally that "[i]n this circuit it is clear that by filing and obtaining a ruling on a proposed instruction a litigant has satisfied Rule 51." Id. at 646. There, because counsel had obtained a definitive ruling rejecting his proposed instruction, we held that the issue had been preserved regardless of counsel's failure to reassert his objection following the delivery of the charge to the jury. That result was based on our belief that Rule 51 must be read in conjunction with Rule 46, which gives litigants an automatic exception to any adverse ruling by operation of law.2 We concluded that given "the relationship between Rule 51 and Rule 46, [ ] counsel was entitled to assume that he need not renew objections already ruled on." Id. at 647. See also United States v. General Motors Corp., 226 F.2d 745, 750 (3d Cir. 1955) (discussing the relationship between Rule 51 and Rule 46).

In case after case, we have held that a definitive ruling from the trial court rejecting a requested instruction is sufficient to preserve the issue for appeal. See Tait v. Armor Elevator Co., 958 F.2d 563, 565 (3d Cir. 1992); Simmons v. City of Philadelphia, 947 F.2d 1042, 1082–83 (3d Cir. 1991); Waldorf v. Shuta, 896 F.2d 723, 731 n.8 (3d Cir. 1990); cf. United States v. Russell, 134 F.3d 171, 179 n.4 (3d Cir. 1998) ("issue preserved for appeal where the party

_____

2. Rule 46 provides in full:

>     Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which the party desires the court to take or the party's objection to the action of the court and the grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party.

5

`may not have formally objected but it is clear from the record that the judge was made aware of the party's position before the jury retired to consider its verdict' ") (quoting Larry v. Muko, Inc. v. Southwestern Pa. Bldg. and Const. Trades Council, 670 F.2d 421, 425 (3d Cir. 1982)). See also 9 James Wm. Moore et al., Moore's Federal Practice S 51.03 (3d ed. 1997) ("Reconciliation of the rules [51 and 46] relieves a party of the need to renew an objection to an instruction if the party's objection has previously been made clear to the trial court.").

Three of our cases appear to deviate from this interpretation. In United States v. Agnes, 753 F.2d 293, 301 n.11 (3d Cir. 1985), a case interpreting Fed. R. Crim. P. 30, the criminal analogue to Fed. R. Civ. P. 51, we held that notwithstanding prior objections and rulings, the failure of counsel to state objections to the instructions following the delivery of the charge constitutes a waiver. We reasoned that Agnes was distinguishable from Bowley because the district court in Agnes had not granted an automatic exception, which we inferred the district court had done in Bowley. However, the statement by the district court in Bowley that counsel had "an automatic exception to every adverse ruling" was merely a recognition of the interplay between Rule 51 and Rule 46. Bowley, 751 F.2d at 641. The "automatic exception" arose by operation of law -- not because the district court had affirmatively granted one.

The Agnes court also cited Piechoski v. Grace Lines, Inc., 409 F.2d 66 (3d Cir. 1969), for the proposition that "Rule 51 requires counsel to state explicitly any exceptions following delivery of the charge." Agnes, 753 F.2d at 301 n.11. In fact, the Piechoski court simply stated that "[c]ounsel is entitled to an opportunity to make objections to the charge following its delivery" and, because counsel was given that opportunity and never objected to the charge at issue, the objection was deemed waived. Piechoski, 409 F.2d at 70 (emphasis added). Piechoski is thus slim authority for Agnes.

The second case in this line is Seman v. Coplay Cement Co., 26 F.3d 428 (3d Cir. 1994), where we stated in dictum that "As written, Federal Rule of Civil Procedure 51 explicitly requires that any objections to the court's charge,

6

to be preserved for appeal, must be taken at the close of the charge `before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.' " Id. at 436 (emphasis added) (quoting Fed. R. Civ. P. 51). The underscored portion of this quote is simply wrong. Rule 51 "as written" requires merely that the specific objection be made "before the jury retires." It says nothing about it being at the close of the charge. Tellingly, the only cases that the Seman panel relied upon for this proposition were Agnes and Bowley -- as that case was misinterpreted in Agnes. In any event, the Seman court held that the objection had not been waived because the district court had informed counsel that it would not have to reassert objections after the delivery of the charge if the court had previously ruled. Id.

Third, and most recently, we stated in Ryder v. Westinghouse Elec. Corp., 128 F.3d 128 (3d Cir. 1997), cert. denied, 118 S. Ct. 1052 (1998), that "[w]e have interpreted [Rule 51] explicitly to require that any objections to the jury charge be made at the close of the charge." Id. at 135. For that proposition, the court cited only Seman. Id. The statement was essentially dictum, however, since the defendant had not, at any time, adequately objected to the specific instruction on appeal. Ryder, 128 F.3d at 135 n.9.

Given the purpose underlying Rule 51, it is difficult to contemplate what objective would be served by requiring counsel to restate an objection that had already been raised and ruled upon. In our opinion, Agnes and the cases following it have gone astray and do not reflect the otherwise consistently applied law of this circuit. We reaffirm then, that "[i]n this circuit it is clear that by filing and obtaining a ruling on a proposed instruction a litigant has satisfied Rule 51." Bowley, 751 F.2d at 646.

Of course, to preserve an issue for appeal, counsel must state "distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51. Whether that occurs in an objection to the charge, in a request to charge, or otherwise, however, should not be determinative of the waiver issue. See 9A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure S 2553 at 411 (2d ed. 1995) ("The failure to object [at the close of the charge] may

7

be disregarded if the party's position previously has been made clear to the trial judge and it is plain that a further objection would be unavailing. This is a risky business, however, and cautious counsel will renew all objections to the instructions at the close of the charge to be sure that those points are preserved.") (citing cases).

Here, Smith submitted to the district court a written proposed instruction distinctly stating his requested charge and the authority therefor. Upon reading the draft of the district court's charge, counsel objected at the in camera charge conference to the omission of his requested instruction and again cited the authority on which his instruction was derived. The district court then ruled and explicitly denied Smith's request. As such, the district court was fully apprised of Smith's position, and it would serve no purpose to require counsel to have formally reasserted the objection after the charge had been given to the jury. Because the language of Rule 51 requires nothing more, we conclude that the issue was preserved. We turn then to the merits of Smith's appeal.

III

It is black letter law that "[i]t is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for the truth." 9A Charles Alan Wright and Arthur Miller, Federal Practice and Procedure S 2556 at 438 (2d ed. 1995). We agree with Smith that the district court's charge left the jury inadequately informed of the applicable law.

In the field of employment discrimination, courts have struggled for decades to develop and refine an evidentiary framework that fairly balances the interests of the employee who challenges her employer's conduct as discriminatory and the interests of the employer faced with such a suit. In numerous cases the courts have recognized that an employee bringing such a suit faces difficulties in amassing proof because discrimination "is often subtle." Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 899 (3d Cir. 1987) (en

8

banc). As we stated, "[d]iscrimination victims often come to
the legal process without witnesses and with little direct
evidence indicating the precise nature of the wrongs they
have suffered." Sheridan, 100 F.3d at 1071 (quoting
Jackson v. University of Pittsburgh, 826 F.2d 230, 236 (3d
Cir. 1987)).

In order "to assure that the plaintiff has his day in court
despite the unavailability of direct evidence," Trans World
Airlines v. Thurston, 469 U.S. 111, 121 (1985) (quotation
omitted), courts developed "a sensible, orderly way to
evaluate the evidence in light of common experience as it
bears on the critical question of discrimination." United
States Postal Serv. Bd. of Governors v. Aikens, 460 U.S.
711, 715 (1983) (quoting Furnco Constr. Corp. v. Waters,
438 U.S. 567, 577 (1978)). What was developed, of course,
was the now-familiar burden shifting framework first
enunciated by the Supreme Court in McDonnell Douglas
Corp. v. Green, 411 U.S. 792 (1973).3

If the plaintiff establishes the elements of a prima facie
case, the employer must articulate a legitimate, non-
discriminatory reason for its employment decision. Once
such a justification is proffered, the burden then reverts to
the plaintiff to prove by a preponderance of the evidence
that the articulated reason is a pretext. At all times, the
plaintiff bears the ultimate burden of proving that
discrimination (here age) was a determinative factor in the
adverse employment decision. See generally St. Mary's
Honor Ctr. v. Hicks, 509 U.S. 502 (1993). The plaintiff "may
succeed in this either directly by persuading the[fact
finder] that a discriminatory reason more likely motivated
the employer or indirectly by showing that the employer's
proffered explanation is unworthy of credence." Texas Dep't
of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).
When a jury finds that the employer's proffered justification
for its actions is pretextual, the jury is permitted, albeit not
mandated, to return a verdict in the plaintiff's favor. See
Hicks, 509 U.S. at 511.
_____

3. Although McDonnell Douglas arose under Title VII, we have
consistently applied its general framework to cases arising under other
discrimination statutes including the ADEA. See Keller v. Orix Credit
Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc).

The rationale for placing so much emphasis on the justification proffered by the employer can be found in the statement made by Chief Justice, then Justice, Rehnquist who wrote that unexplained acts "are more likely than not based on the consideration of impermissible factors." Furnco Constr. Corp., 438 U.S. at 577. He continued, "when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration such as race." Id.

Because "an employer who knowingly discriminates . . . may leave no written records revealing the forbidden motive and may communicate it orally to no one," Chipollini, 814 F.2d at 899 (quotation omitted), it is only natural that the focus of a discrimination trial in accordance with McDonnell Douglas will be the veracity of the justification offered by the employer to explain its conduct. If the employer fails to tell the truth, "it does so at its own peril . . . . [and] the jury [may] infer that the real motivation is the one that the plaintiff has charged." Sheridan, 100 F.3d at 1069.

The jury charge played a central role in our holding in Sheridan that a finding of pretext was a permissible basis for a verdict of discrimination. We stated: "[i]t is the jury's determination that the reason given was pretextual together with the evidence that supported the prima facie case that will sustain a finding of intentional discrimination made after a proper charge." Sheridan, 100 F.3d at 1071 (emphasis added).

Notwithstanding the pivotal role played by pretext in the ultimate decision of discrimination vel non, the district court in the case at bar refused to inform the jurors of that role. At the heart of the district court's charge, the court instructed the jury as follows:

> [T]he dispositive fact that you must decide is whether Mr. Smith has proven by a preponderance of the evidence that his age was a determining factor in the borough's decision not to renew his employment contract. He need not prove that his age was the sole or exclusive reason for the borough's decision not to

10

renew the contract. Age is a determining factor,
however, if Mr. Smith's contract would have been
renewed except for his age.

App. at 1053. The court repeatedly emphasized that the
jury's task was to determine whether Smith's age was a
determinative factor in the Borough's decision not to renew
his employment contract. App. at 1054-55, 1058.

Although we acknowledge that the Seventh Circuit has
signified its approval of an instruction similar to that given
here, see, e.g., Achor v. Riverside Golf Club, 117 F.3d 339
(7th Cir. 1997), the Second Circuit has expressly required
more. It stated:

>  If the defendant has met its burden of producing
>  evidence that, if taken as true, would rebut the prima
>  facie case, a threshold matter to be decided by the
>  judge, the jury need not be told anything about a
>  defendant's burden of production. In that event,
>  whether or not the facts of the plaintiff 's prima facie
>  case are disputed, the jury needs to be told two things:
>  (1) it is the plaintiff 's burden to persuade the jurors by
>  a preponderance of the evidence that the apartment (or
>  job) was denied because of race (or, in other cases,
>  because of some other legally invalid reason), and (2)
>  the jury is entitled to infer, but need not infer, that this
>  burden has been met if they find that the [facts needed
>  to make a prima facie case] have been established and
>  they disbelieve the defendant's explanation.

Cabrera v. Jakabovitz, 24 F.3d 372, 382 (2d Cir. 1994)
(emphasis added) (citations and footnotes omitted).

This court has not yet addressed this precise issue.
However, we have steadfastly adhered to the principle that
the "objective of the charge is to clarify the issues in the
light of the evidence `to provide aid and guidance for the
jury.' " Atkinson v. Roth, 297 F.2d 570, 574 (3d Cir. 1961)
(quotation omitted). The trial court must ensure "that the
jury be given full and complete instructions by relating the
law to the relevant evidence in the case." Choy v. Bouchelle,
436 F.2d 319, 325 (3d Cir. 1970). We have considered this
such an important function that we have reversed jury
verdicts because the trial court failed to provide the

11

requisite legal guidelines even when the party failed to preserve an objection. Id.; Richardson v. Walsh Constr. Co., 334 F.2d 334, 338 (3d Cir. 1963); Atkinson, 297 F.2d at 575; McNello v. John B. Kelly, Inc., 283 F.2d 96, 102 (3d Cir. 1960).

Applying these principles, it is clear that the jury must be given the legal context in which it is to find and apply the facts. It is difficult to understand what end is served by reversing the grant of summary judgment for the employer on the ground that the jury is entitled to infer discrimination from pretext, as we instructed in Fuentes v. Perskie, 32 F.3d 759, 764–65 (3d Cir. 1994), if the jurors are never informed that they may do so. Accordingly, we join the Second Circuit in holding that the jurors must be instructed that they are entitled to infer, but need not, that the plaintiff 's ultimate burden of demonstrating intentional discrimination by a preponderance of the evidence can be met if they find that the facts needed to make up the prima facie case have been established and they disbelieve the employer's explanation for its decision.4

The Borough contends that, even without Smith's requested instruction, the court's charge read as a whole adequately informed the jury what it was permitted to do if it disbelieved the Borough's proffered justification for its decision. The first portion of the charge to which the Borough points instructed the jury that it could discredit a witness's testimony if it found inconsistencies or discrepancies therein. This, however, merely instructed the jurors as to when they may disbelieve a witness. It said nothing about what the jury may do or infer once the jurors had decided to disbelieve the employer's proffered reason.

The second instruction that could be read to support the Borough's position informed the jury that it could consider direct or circumstantial evidence and provided examples, including a departure from the employer's standard

_____

4. This does not mean that the instruction should include the technical aspects of the McDonnell Douglas burden shifting, a charge reviewed as unduly confusing and irrelevant for a jury. See Loeb v. Textron, Inc., 600 F.2d 1003, 1016 (1st Cir. 1979); Messina v. Kroblin Transp. Sys., 903 F.2d 1306 (10th Cir. 1990).

practices, suspect decision making methods, a history of discrimination, a hostile work environment or statistical proof of discrimination. This instruction is inadequate for those employees who have little or no circumstantial evidence of the type alluded to by the district court, the very plaintiffs for whom the McDonnell Douglas framework was developed. Under this instruction, the jurors who found no evidence fitting the examples of circumstantial evidence referred to in the charge but who disbelieved the employer's explanation could reasonably conclude that there was no evidence on which they would be permitted to base a plaintiff 's verdict. This conclusion would, of course, be incorrect as a matter of law but would be understandable in light of the instruction.

Third, the district court instructed the jury that it could make inferences based on common experiences and common sense. Although the inference of discrimination arising from pretext is grounded in the common sense notion that any party's false testimony may be taken as evidence of its having fabricated its case, Sheridan, 100 F.3d at 1069, this does not mean that the jury will know without being told that its disbelief in the employer's proffered reason may be evidence that, coupled with evidence establishing plaintiff's prima facie case, will support a finding of intentional discrimination. While it may appear to us, looking from the perspective of our knowledge of the reported opinions, that the evidentiary framework that evolved is nothing more than common sense, the jury comes to its task without that background or history. If the district courts are not required to instruct the jurors that they may use the evidence that supported plaintiff 's prima facie case coupled with their rejection of the reasons offered by the employer for the employment decision to conclude that the employer intentionally discriminated, then all our carefully honed language will have been an exercise in irrelevance.

In light of the decades it has taken for the courts to shape and refine the McDonnell Douglas standard into its present form and the inordinate amount of ink that has been spilled over the question of how a jury may use its finding of pretext, it would be disingenuous to argue that it

13

is nothing more than a matter of common sense. Indeed, the answer to the question of whether a jury is allowed to infer discrimination from pretext eluded many of the federal courts of this country for a substantial period of time. As we stated in Atkinson, "If it is to be assumed that jurors have ordinary intelligence, it may not be assumed that they are students of the law. The task of the jury, to apply the rules of law as given by the court below, certainly cannot be satisfactorily accomplished . . . in the abstract." 297 F.2d at 574 (overturning the verdict because, inter alia, the trial court failed to include in its charge the rather obvious direction that negligence cannot be imputed to the passengers).

Without a charge on pretext, the course of the jury's deliberations will depend on whether the jurors are smart enough or intuitive enough to realize that inferences of discrimination may be drawn from the evidence establishing plaintiff's prima facie case and the pretextual nature of the employer's proffered reasons for its actions. It does not denigrate the intelligence of our jurors to suggest that they need some instruction in the permissibility of drawing that inference.

Former Chief Judge Biggs of this court has explained that the rule that the district court must give a requested instruction in accordance with a party's contention and consistent with the evidence unless the subject matter has been covered adequately elsewhere in the charge, see generally Wright & Miller S 2556 at 444, is based on the unacceptability of leaving "entirely to the jury the task of particularizing the legal standard and working out the alternatives possible under the facts." See McNello, 283 F.2d at 102. That was the task the court's instruction left the jury, although there was evidence that the Borough's explanation for its action varied. It had advised the EEOC and the Pennsylvania Commission on Human Relations that it didn't renew Smith's employment contract because he failed to file a formal application, in contrast to its explanation at trial which emphasized Smith's poor job performance. While this variation in articulated reasons did not compel the jury to disbelieve the Borough, the inconsistency was sufficient for a reasonable jury to view it

14

as evidence of pretext leading to an inference of discrimination if the jury had been adequately charged.

We do not intend for today's holding to suggest that Smith has presented a particularly strong case or that the jury necessarily would have found it persuasive even with a proper instruction. Nevertheless, the rule we announce today will be equally applicable in future discrimination cases and, thus, it is with an eye to the future that we must fashion a rule in the context of the facts of this case.

We conclude, therefore, that the district court erred in refusing to instruct the jury that it was permitted but not required to infer intentional discrimination if it found that Smith had proven the elements of his prima facie case and if it disbelieved the Borough's explanation for not having renewed Smith's contract.

IV

Based on the foregoing, we will vacate the jury's verdict for the Borough and remand the case to the district court for a new trial.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

15