

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-10-2005

# Bostic v. Smyrna Sch Dist

Precedential or Non-Precedential: Precedential

Docket No. 04-1463

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Bostic v. Smyrna Sch Dist" (2005). *2005 Decisions.* Paper 619.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/619

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-1463

_____

JAMES BOSTIC; CHERIE BOSTIC, as next
friends of minor plaintiff Jennifer Bostic;
JENNIFER BOSTIC,

Appellants

v.

SMYRNA SCHOOL DISTRICT; SMYRNA
BOARD OF EDUCATION; SMYRNA HIGH
SCHOOL; CLARENCE E. LLOYD, in his
individual and official capacities; ANTHONY
E. SOLIGO, in his individual and official
capacities; JOHN SMITH, in his individual
and official capacities; EVELYN SMITH

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 01-0261)
District Judge: The Honorable Kent A. Jordan

_____

Argued June 9, 2005

BEFORE: AMBRO, VAN ANTWERPEN and TASHIMA[*],
Circuit Judges,

(Filed  August 10, 2005)

Richard R. Wier, Jr. (Argued)
Daniel W. Scialpi
Richard R. Wier, Jr., P.A.
1220 Market St. Suite 600
Wilmington, DE  19801
*Counsel for Appellants*

Jonathan L. Parshall (Argued)
Murphy Spadaro & Landon
1011 Centre Road Suite 210
Wilmington, DE  19805
*Counsel for Appellees*

OPINION OF THE COURT

TASHIMA, Circuit Judge

James,  Cherie,  and  Jennifer  Bostic  (collectively,

[*]The Honorable A. Wallace Tashima, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

"Appellants")[1] appeal a jury verdict in favor of Smyrna School District, the Smyrna Board of Education, Smyrna High School (collectively, "Appellees" or "Smyrna Defendants"), and various individual defendants. Bostic filed suit against Defendants under Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681, *et. seq.*, based upon their alleged deliberate indifference to a sexual relationship between Bostic and her track coach John Smith, also named as a defendant, while she was a high school student. The jury returned a verdict in favor of all defendants, except Smith, on all claims against them, finding only Smith liable. The District Court subsequently denied Bostic's motion for a new trial. On appeal, Appellants contend that the district court erred in instructing the jury on who is an "appropriate official" and what constitutes "actual notice" for purposes of Title IX liability.

## I. JURISDICTION

The District Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331 and exercised supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II. FACTUAL AND PROCEDURAL BACKGROUND

---

[1] For ease of reference, we will refer only to Jennifer as Bostic.

A.     Factual Background

In the spring of 1999, Bostic was fifteen years old, a sophomore at Smyrna High School, and a member of the school's track team, which was coached by Smith. A sexual relationship developed between Bostic and Smith. The relationship included numerous sexual encounters during and after the school day, both on and off campus, and continued for approximately one year.

The relationship became a topic of discussion among students and generated reports that reached Principal Clarence Lloyd and Associate Principal Anthony Soligo. Bostic's parents became concerned about the close relationship that they observed between Bostic and Smith, including an incident when Bostic and Smith were found alone together in a car at night.

In September 1999, Mr. Bostic met with Lloyd and expressed his concerns. Lloyd told Mr. Bostic that he would speak with Smith and get back to him. Lloyd subsequently called Smith into his office and, in the presence of Soligo and James Kiger, the school's athletic director, discussed with Smith the allegations made by Mr. Bostic. At the meeting, Smith stated that he was sitting in the car discussing his marital problems with Bostic. Lloyd warned Smith that being alone with a student at night in a parked car was inappropriate and told Smith to avoid improper conduct. Soligo also told Smith that he should "minimize contact" with Bostic. Smith responded that he had "it covered." Lloyd subsequently called

4

Mr. Bostic and left a message describing what he had done and asking Mr. Bostic to call him back if he had any further concerns. Mr. Bostic did not call back.

Michael Feldman, a teacher at the school, subsequently saw Smith and Bostic standing together in the hallway on two occasions. Feldman stated that they were so close together that they appeared to be two students, rather than a teacher and a student. Feldman discussed the incidents with an assistant principal, who conveyed the information to Lloyd.

After learning of the hallway incidents, Lloyd summoned Smith for another meeting with him and Soligo. At that meeting, Lloyd reprimanded Smith and told him to cease one-on-one contact with Bostic. Lloyd stated that he "felt that he gave him a very strong reprimand, that this was not going to be tolerated." Lloyd then spoke with Bostic, who told him that there was "nothing going on."

Lloyd told Ron Eby, assistant superintendent for the school district, about the concerns regarding Bostic and Smith and what he had done. Lloyd also asked whether he should do anything else. Eby told him to keep an eye on the situation and relayed the information to Debbie Wicks, the superintendent of the district.

A few months later, Smith's wife, also a teacher at Smyrna High School, told Lloyd that she had caught Smith and Bostic alone in her room at school. The next day, Mrs. Bostic

told Lloyd that she had purchased a clone pager, was monitoring Bostic's pages, and had hired a private investigator to monitor the situation. Lloyd spoke with Smith again and expressed his concerns. Smith admitted calling Bostic, but he told Lloyd it was about track practice and again denied any illicit interaction with Bostic.

In early February 2000, Mrs. Bostic asked Lloyd to allow a private investigator she had hired onto the school campus and to install cameras to monitor Bostic and Smith. Eby advised Lloyd not to allow the investigator on campus, but Eby stated that he would contact the District Attorney's office regarding the cameras.

Wicks set up a meeting with Eby and Smith, at which Smith again denied any improper relationship with Bostic. Because Smith seemed credible at the meeting, the administrators took no further action.

Mrs. Bostic then spoke with Barry Meekins, a member of the Smyrna Board of Education, about her concerns. On the same day, Meekins called Wicks, asked why he had not been informed of the situation, and stated that, based on what Mrs. Bostic had said, he was going to call the police. Although her reasons for doing so are unclear, Wicks tried to dissuade Meekins from calling the police. On February 28, two police officers spoke with Wicks and told her that they were investigating a possible relationship between Smith and a different student. Wicks suspended Smith that day. Smith

6

subsequently was arrested and pled guilty to crimes involving both students.

B.     Procedural Background

Bostic's complaint alleged that the Smyrna Defendants were liable under Title IX, and that all defendants were liable under 42 U.S.C. § 1983, and state common law. The Smyrna Defendants moved for summary judgment on all claims against them. The motion was granted as to certain state common law claims and the Title IX claims against Lloyd and Soligo. The District Court, however, let stand the § 1983 and Title IX claims. It concluded that there were material issues of fact with regard to whether the relevant officials had "actual knowledge" of the relationship and whether their response was "deliberately indifferent."

The case went to trial and the jury found for the Smyrna Defendants on all remaining claims. The jury did, however, find Smith liable and assessed damages against him in the amount of $400,000.

Bostic moved for a new trial on the grounds that (1) the verdict was against the great weight of the evidence, and (2) the District Court's jury instructions with regard to "actual notice," "appropriate official," "supervisory liability," and "lack of training" were erroneous. The District Court denied the motion, and Bostic timely appealed.

## III. ANALYSIS

Bostic's sole contention on appeal is that the District Court's instructions on "actual notice" and "appropriate official" under Title IX misstate the law and were contrary to the teachings of the Third Circuit and the United States Supreme Court.[2]

### A. Objection raised below

The Smyrna Defendants contend that Bostic failed to object to the Title IX jury instructions below. In order to preserve an objection "to an instruction or the failure to give an instruction," a party must timely object "on the record, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51(c)(1). "Generally, a party who does not clearly and specifically object to a charge he believes to be erroneous waives the issue on appeal." *Alexander v. Riga*, 208 F.3d 419, 426 (3d Cir. 2000); *see also* Fed. R. Civ. P. 51(d)(1). However, we "may consider a plain error in the instructions affecting substantial rights that has not been preserved as required by Rule 51(d)(1)(A) or (B)." Fed. R. Civ. P. 51(d)(2).

---

[2] Bostic does not contest the jury's verdict in favor of Appellees on her 42 U.S.C. § 1983 claim, the jury instructions pertaining to "supervisory liability" and "lack of training," or the denial of her motion for a new trial based on the weight of the evidence.

During a charge conference held in chambers, the Court asked the parties to review the jury instructions he had formulated, advising them to pay "particular attention to Title IX." After a short recess, the Judge returned and inquired whether "there [was] anything . . . in the substance of the instructions thus far that we ought to raise." Bostic's counsel stated, "I still request our instructions on Title IX. But I don't have any objections at this point as to the instruction." Although Bostic's counsel subsequently reiterated his request for the Court to give his proposed instruction, he did not "stat[e] distinctly the matter objected to and the grounds of the objection," as required by Rule 51(c)(1). To the contrary, he specifically stated that he did not have any objections to the Title IX instruction. We therefore review for plain error. "Under such circumstances, we will overturn a verdict 'only where the error is fundamental and highly prejudicial or if the instructions are such that the jury is without adequate guidance on a fundamental question and our failure to consider the error would result in a miscarriage of justice.'" *Watson v. S.E. Penn. Transp. Auth.*, 207 F.3d 207, 212 (3d Cir. 2000) (quoting *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 275 (3d Cir. 1998)).

B.    Jury instructions

Title IX provides in pertinent part that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX encompasses sexual

9

harassment of a student by a teacher and is enforceable through an implied private right of action for damages against a school district. *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 75-76 (1992).

In order to enforce Title IX's nondiscrimination mandate, an agency that disburses federal education funds must provide "notice to an 'appropriate person' and an opportunity to rectify any violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (quoting 20 U.S.C. § 1682). Relying on these requirements, the Supreme Court held in *Gebser* that damages may not be recovered under Title IX "for the sexual harassment of a student by one of the district's teachers . . . unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Id.* at 277. An "appropriate person" is "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the . . . [district's] behalf." *Id.* at 290. "Actual notice" must amount to "actual knowledge of discrimination in the recipient's programs." *Id.* Further, "the response must amount to deliberate indifference to discrimination. . . . The premise, in other words, is an official decision by the recipient not to remedy the violation." *Id.*

Here, the district court instructed the jury in pertinent part as follows:

10

In order for Jennifer Bostic to establish her Title IX claim against the Institutional Defendants, she has the burden of proving by a preponderance of the evidence that a school official with the power to take action to correct the discrimination had actual notice of the discrimination, and, further, that the Institutional Defendants then responded to that notice with deliberate indifference. . . .

An educational institution has "actual notice," sometimes called "actual knowledge" of discrimination[,] if an appropriate person at the institution has knowledge of facts sufficiently indicating substantial danger to a student so that the institution can reasonably be said to be aware of the danger.

An "appropriate person" is the type of school official I've referred to previously, namely one with the power to take action to correct the discrimination. A school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be an "appropriate person." Other school officials may be "appropriate persons," depending on their power to take corrective action to address the discrimination and institute corrective measures.

11

1.      Actual notice

Appellants contend that the "actual notice" requirement is satisfied by "information sufficient to alert the principal to the possibility that a teacher was involved in a sexual relationship with a student."  They argue that the district court's instruction used a higher standard of notice than that required by *Gebser* and by *Warren v. Reading Sch. Dist.*, 278 F.3d 163 (3d Cir. 2002).[3]

Contrary to Bostic's contention, *Gebser* never set forth a standard of "actual notice" based upon "information sufficient to alert the principal to the possibility that a teacher was involved in a sexual relationship with a student."  Rather, *Gebser* clearly stated that an "appropriate person" must have "actual knowledge of discrimination in the recipient's programs and fail[] adequately to respond." *Gebser*, 524 U.S. at 290.  The excerpt of *Gebser* cited by Bostic is taken out of context from a section of the opinion in which the Court applied the framework it had established to the facts of the case.  What the Court actually stated was that information that "consisted of a complaint from parents of other students charging only that [the teacher] had made inappropriate comments during class . . . was

---

[3]      *Warren* was concerned with who is an "appropriate person" and did not address the "actual notice" issue.  *See Warren*, 278 F.3d at 171-75 (discussing the standard for who is an "appropriate person" and whether the plaintiff established that an "appropriate person" had actual knowledge).

plainly *in*sufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student." *Id.* at 291 (emphasis added).

Moreover, given the Court's express rejection of constructive notice or *respondeat superior* principles to permit recovery under Title IX, it is unlikely that it intended "actual notice" to be based on a "possibility." *See id.* at 285-90. Indeed, in a subsequent opinion, the Court noted that "*Gebser* thus established that a recipient intentionally violates Title IX . . . where the recipient is deliberately indifferent to *known acts* of teacher-student discrimination." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 643 (1999) (emphasis added). Because a "possibility" cannot be equated with a "known act," Appellants' proffered jury instruction on "actual notice" did not correctly set forth the law; therefore, the District Court did not err in rejecting it.

Bostic also contends that the District Court erred in including language relating to "substantial danger" in the "actual notice" instruction. This language is identical to that used in 3C Fed. Jury. Prac. & Instr. § 177.36 (5th ed. 2001):

> An educational institution has "actual knowledge" if it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger.

13

*Id.* The instruction subsequently cites to both *Davis* and *Gebser*. Although the "substantial danger" language does not appear in either case, neither is it inconsistent with the standard set forth in those cases regarding "actual knowledge." *See Davis*, 526 U.S. at 643 (recipient must be deliberately indifferent to "known acts of teacher-student discrimination"); *Gebser*, 524 U.S. at 290 (recipient must have "actual knowledge of discrimination").

Bostic correctly points out that the substantial danger language originates from a pre-*Gebser* Fifth Circuit opinion, *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 653 (5th Cir. 1997). However, *Gebser* itself affirmed another Fifth Circuit opinion that relied upon the reasoning in *Rosa H. See Gebser*, 524 U.S. at 279-80; *Doe v. Lago Vista Indep. Sch. Dist.*, 106 F.2d 1223, 1226 (5th Cir. 1997) (citing the standard in *Rosa H.* that "school districts are not liable in tort for teacher-student harassment under Title IX unless an employee who has been invested by the school board with supervisory power over the offending employee actually knew of the abuse, had the power to end the abuse, and failed to do so"). We therefore reject Appellant's contention that *Rosa H.* and the "substantial danger" language are no longer validly applied to Title IX. The District Court's instruction on actual notice did not constitute error, much less plain error.

2.     Appropriate person

Bostic also challenges the District Court's instruction

14

regarding "appropriate person." She contends that the jury should have been instructed that Lloyd and Soligo were both appropriate officials as a matter of law, given that Lloyd's position as principal and Soligo's position as assistant principal were undisputed.

We concluded in *Warren* that "a school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be 'an appropriate person' under Title IX." *Warren*, 278 F.3d at 171. Nevertheless, contrary to Appellants' contention, that did not end the inquiry. Rather, we went on to state that "we must still determine if the evidence here was sufficient to allow a reasonable jury to conclude that 'an appropriate person' had actual knowledge of . . . [the] abuse." *Id. Warren* therefore does not support Appellants' argument that Lloyd and Soligo should be deemed appropriate persons, as a matter of law, by virtue of their positions. *Warren* did conclude that the district court erred in failing to instruct the jury that the school guidance counselor could *not* be an appropriate person, based on the record in that case. *Id.* at 174. However, this is not analogous to saying, as Bostic contends, that the District Court here should have instructed that Lloyd and Soligo *are* appropriate officials. The Court did not err in failing to so instruct the jury. Moreover, its instruction regarding a school principal followed the language of *Warren* precisely.

15

## IV. CONCLUSION

Based upon the foregoing, we affirm the judgment of the District Court.[4]

---

[4]   Because of our resolution of the jury instructions issues raised by Appellants, it is unnecessary to address Appellees' contention that the District Court erred in holding that the relationship between Smith and Bostic was "unwelcome" as a matter of law, or to resolve whether Appellees preserved the issue, despite their failure to file a cross-appeal on the issue.