**MACKIMDALE SMITH, Plaintiff**

**v.**

**LOU ELIAS and MERCHANTS MARKET, INC., Defendants**

Civil No. 56/2003

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

October 11, 2007

Lee J. Rohn, Esq., Rohn & Cameron, LLC, St. Croix, Virgin Islands, *Attorney for the Plaintiff.*

CHARLES E. ENGEMAN, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, L.L.C., St. Thomas, Virgin Islands, *Attorney for the Defendant(s).*

HOLLAR, *Judge*

## MEMORANDUM OPINION

(October 11, 2007)

### I. INTRODUCTION

This matter is before the Court on Defendant's Motion for Judgment as a Matter of Law or Alternatively for New Trial pursuant to FED. R. CIV. P. 50 and 59[1], respectively. Defendant, Merchants Market, Inc.[2] ("Defendant") raises a number of issues in support of this Motion. In response, Plaintiff, Mackimdale Smith ("Plaintiff"), filed an Opposition to Defendant's Rule 50 Motion for Judgment as a Matter of law or Alternatively for New Trial, requesting this Court to sustain the jury verdict awarding Plaintiff for compensatory and punitive damages. For reasons that follow, Defendant's motion is denied.

### II. FACTUAL HISTORY

On or about January 27, 1997, Plaintiff began employment as a "Warehouse Assistant Driver" with Merchants Market, Inc. Plaintiff's major responsibilities included driving, handling stock, loading and unloading containers, completing pertinent paper work and collecting accounts payable. On August 18, 2000, while making a delivery, in the course of his employment for Merchants Market, Plaintiff was involved in a vehicle collision whereby he rear-ended a vehicle driven by Shermain Lawrence (hereinafter "Lawrence"). Despite having pled guilty to negligent driving and having paid the requisite fine, Plaintiff nevertheless maintained that the accident was caused by faulty brakes and not negligence on his part. At the time of the accident, Plaintiff was driving a vehicle registered to a fellow colleague by the name of Geoffrey Robinson, who was employed by Merchants Market as a driver dispatcher. The vehicle, however, was regularly used in the course of

---

[1] As further discussed, SUPER. CT. R. 135 is the appropriate rule for bringing a motion for new trial in the Superior Court of the Virgin Islands.

[2] The co-defendant, Lou Elias, was dismissed at the end of the Plaintiff's case.

business by Merchants Market. After the accident, Plaintiff notified his supervisor, Anthony Shillingford, in the presence of George Clark, a manager with Merchants Market, that brake failure was the cause of the accident.

Lawrence initiated legal action against Merchants Market, Plaintiff and Robinson on October 9, 2001, alleging *inter alia* that "Plaintiff was in the course and scope of his employment" at the time of the accident. Thereafter, Louis Elias, (hereinafter "Elias"), management representative of Merchants Market, approached Plaintiff and requested Plaintiff to perjure himself in court by testifying that he was on "a personal errand" and not on official business of Merchants Market at the time of the accident. Plaintiff refused to engage in such a dastardly, unethical and unlawful act. Undaunted by Plaintiff's refusal to engage in an insurance fraud scheme, Elias later insisted upon Plaintiff furnishing a copy of his personal automobile insurance policy. Plaintiff also declined to do that. Shortly after Plaintiff declined to perjure himself or surrender his personal automobile insurance to Elias, a number of verbal threats were made to him. To add insult to injury, unjustifiable retaliatory measures were immediately taken against the Plaintiff by Defendants as well. As a result of these egregious acts, Plaintiff contends that he suffered extreme emotional injury.

## III. PROCEDURAL POSTURE

On January 30, 2003, a civil action against Defendants Elias and Merchants Market was filed by Plaintiff Smith alleging in Count I, Deprivation of First Amendment Rights; Count II, Suborning Perjury; Count III, Intentional Infliction of Emotional Distress ("IIED"); Count IV, Wrongful Discharge; and Count V, Application of Punitive Damages. An Answer was filed by Defendants on March 3, 2003, denying the allegations set forth in the complaint and invoking several affirmative defenses. After an attempt at mediation and a substantial period of discovery, Defendants filed, on December 15, 2005, a Motion for Summary Judgment to dismiss the action under FED. R. CIV. P. 56, alleging that there was no genuine issue of material fact as to any of the causes of action, thus warranting dismissal. The Plaintiff, on January 19, 2006, filed an opposition to the Defendant's motion and Defendants followed with a reply on January 30, 2006.

By Order dated March 14, 2006, this Court granted, in part, Defendants' Motion for Summary Judgment, dismissing Counts I, II, and IV. However, summary judgment was denied on Counts II and V, intentional infliction of emotional distress and punitive damages, respectively.

Thereafter, on March 20, 2006, a jury trial commenced on the remaining issues. On March 22, 2006, a verdict was returned in favor of the Plaintiff, awarding him One Hundred Fifty Thousand Dollars ($150,000.00) in compensatory damages on his claim for intentional infliction of emotional distress and Three Hundred Fifty Thousand Dollars ($350,000.00) in punitive damages. The Court entered Judgment on March 29, 2006. Following the verdict, on May 1, 2006[3], Defendant filed the instant motion. Plaintiff's response followed on June 2, 2006, with a reply by Defendant on June 19, 2006.

## IV. ANALYSIS

The two major issues to be decided by the Court are: (1) whether the Defendant's motion for judgment as a matter of law should be granted; and (2) whether alternatively, the Defendant's motion for new trial should be granted.

### A. Defendant's Motion for Judgment As A Matter of Law Should Not Be Granted

The Defendant contends that it is entitled to judgment as a matter of law on the grounds that: (1) the Workers' Compensation Act bars the Plaintiff's claim; (2) Plaintiff's action based on intentional infliction of emotional distress ("IIED") cannot be supported in the absence of expert medical testimony; and (3) the extreme and outrageous component of the Plaintiff's IIED claim is unsupported by the evidence.

---

[3] Under FED. R. CIV. P. 50, a party is given ten (10) days from entry of judgment to file a Motion for Judgment As A Matter of Law or Alternatively for New Trial. However, due to clerical error on the part of the Court, Judgment was not received by Defendant's Counsel until Friday April 21, 2006; therefore, a Motion for Leave to File Out of Time under Superior Court Rule 10(b) was filed. Acknowledging Defendant's Motion, the Court, by Order dated May 4, 2006, set a deadline for Plaintiff to respond.

## 1. Standard of Review for Motion for Judgment as a Matter of Law

■ A motion for judgment as a matter of law will be granted only when a moving party has established that the non-moving party ". . . has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." FED. R. CIV. P. 50(a)(1). When a defendant moves for judgment as a matter of law, the Court must "'consider the evidence in the light most favorable to the [plaintiff] and deny the motion if the evidence reasonably tends to support recovery by the plaintiff as to any of its theories of liability'". *Virgin Islands Maritime Services, Inc. v. Puerto Rico Maritime Shipping Authority*, 978 F. Supp. 637, 645 (D.V.I. 1997) (citing *Walmsley v. City of Philadelphia*, 872 F.2d 546, 551 (3d Cir. 1989), *cert. denied*, 493 U.S. 955, 110 S. Ct. 368, 107 L. Ed. 2d. 354 (1989). The Court, in making its decision, will not judge the credibility of witnesses nor will it weigh the evidence, deciding only, after giving the plaintiff every fair and reasonable inference, whether there was sufficient evidence upon which the jury could reasonably find for him. *Couch v. St. Croix Marine, Inc.*, 667 F. Supp. 223, 225 (D.V.I. 1987). When the record lacks that minimum quantum of evidence from which a jury might reasonably afford relief, granting a motion for judgment as a matter of law is appropriate. *Virgin Islands Maritime Services, Inc.*, 978 F. Supp. at 645.

### a. The Workers' Compensation Act does not bar Plaintiff's claim, therefore judgment as a matter of law, dismissing the action, is not warranted.

■■ The Restatement (Second) of Torts, which is the governing law ". . . in the absence of local laws to the contrary,"[4] allows for claims based on ". . . extreme and outrageous conduct [that] intentionally or recklessly causes severe emotional distress to another . . ." RESTATEMENT (SECOND) OF TORTS § 46 (1965). Under the Virgin Islands Workers' Compensation

---

[4] "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." V.I. CODE ANN. tit. 1, § 4; *See also Monk v. Virgin Islands Water & Power Authority*, 53 F.3d 1381 (3d Cir. 1995).

Act ("WCA"), however, there can be no recovery for tort injuries that arise out of and in the course of employment, unless an exception to the WCA exclusivity provision can be shown. *See generally, Eddy v. Virgin Islands Water and Power Authority*, 369 F.3d 227, 233-234 (3d Cir. 2004). The WCA, set forth at V.I. CODE ANN. tit. 24, § 284, provides, in pertinent part,

> when an employer is insured under this chapter, the right herein established to obtain compensation shall be the only remedy against the employer, but in case of accident to, or disease or death of, an employee not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be the same as if this chapter did not exist. (*Emphasis Added.*)

In order to determine whether the exclusivity provision is applicable in the case *sub judice*, the Court must determine whether the particular injuries are compensable within the scope of the statute. *Id.* (citing *Robinson v. Hess Oil V.I. Corp.*, 19 V.I. 106, 109 (D.V.I. 1982)). Recognizing this exception, the Third Circuit has held that:

> [w]e recognized [. . .] that, regardless of the character of the injury, there is an exception to the exclusivity bar for tort suits where the employee can show that "*the conduct* [of the employer can] *be regarded as so egregious as to exceed the bounds of negligence and constitute the sort of intentional wrongdoing necessary to comprise an exception to the exclusive remedy provision of WCA § 284(a).*"

*See id.* (citing *Chinnery v. Government of the Virgin Islands*, 865 F.2d 68, 72 (3d Cir. 1989)). (Emphasis Added). Moreover, territorial jurisprudence has previously recognized that any exception to the exclusivity provision is strictly ". . . limited to situations in which there is an 'actual, specific and deliberate intention to injure . . .'" *Eddy*, 369 F.3d at 234 (citing *Ferris v. Virgin Islands Industrial Gases, Inc.*, 23 V.I. 183, 188 (V.I. 1987)). Additionally, the nature of the conduct, identified in *Eddy*, which held that the key in determining whether the test is met ". . . is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of intentional versus accidental quality . . . of the precise event producing injury." *Id.* at 234.

 In the case *sub judice*, Plaintiff initiated suit under an intentional infliction of emotional distress ("IIED") theory. In his complaint, Plaintiff

alleged specific intent on the part of his employer to inflict emotional distress upon him and that the resulting emotional injury was severe due to his employer's extreme conduct. As a result of these allegations, the suit was not barred under the aforementioned WCA exclusivity clause. Furthermore, the jury found that the Plaintiff did prove that Defendant Elias exceeded the scope of his authority (although ratified by the principal) by engaging in actionable, reprehensible, and wrongful tactics against Plaintiff in an effort to avoid liability for an accident caused by an employee, on company time, while operating a company vehicle within the scope of his employment. Accordingly, the conduct recited in the complaint was well within the exception to the "WCA".

### b. An action based on intentional infliction of emotional distress can be supported despite the absence of expert medical testimony; therefore a judgment as a matter of law dismissing the action is not warranted.

■ Under Virgin Islands' Law, specifically § 46 of the RESTATEMENT (SECOND) OF TORTS, a party is entitled to recover for emotional distress that is intentionally or recklessly caused by another. § 46 states, in pertinent part: "(1) one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." RESTATEMENT (SECOND) OF TORTS § 46(1) (1965). In proving a claim for emotional distress, the conduct complained of must be extreme or outrageous. *See Cox v. Keystone Carbon Company*, 861 F.2d 390, 395 (3d Cir. 1988). The test for establishing a claim under IIED requires a plaintiff to show that: "(1) defendants acted intentionally or recklessly; (2) the conduct was 'extreme and outrageous;' (3) defendants' actions were the proximate cause of plaintiff's emotional distress; and (4) plaintiff suffered 'severe emotional distress.'" *See Lemke v. International Total Services, Inc.* 56 F. Supp. 2d 472, 488 (D.N.J. 1999) (applying New Jersey law, which has adopted RESTATEMENT (SECOND) OF TORTS § 46 for intentional infliction of emotional distress claims).

Several comments to § 46 also provide useful guidance on the proof required in these cases. Comment d[5] to § 46 defines the threshold of proof required for a claim of emotional distress to survive. Comment h[6] clarifies the role of both the court and the jury in permitting recovery. Under comment i[7], intent and recklessness are read *in pari materia* within § 46. Further, Comment j[8] spells out the requirement of severity for emotional distress claims.

---

[5] *d. Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 47 HARVARD LAW REVIEW 1033, 1053 (1936). It is only where there is a special relation between the parties, as stated in § 48, that there may be recovery for insults not amounting to extreme outrage. RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965).

[6] *h. Court and jury.* It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability. RESTATEMENT (SECOND) OF TORTS § 46 cmt. h (1965).

[7] *i. Intention and recklessness.* The rule stated in this Section applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly, as that term is defined in § 500, in deliberate disregard of a high degree of probability that the emotional distress will follow. RESTATEMENT (SECOND) OF TORTS § 46 cmt. i (1965).

[8] *j. Severe emotional distress.* The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, hu-

■ Lastly, comment k[9] sets forth the rule that bodily harm is not a requirement for finding emotional distress, despite the fact that many times such distress is followed by some sort of physical injury.

Given the foregoing, the pivotal question remains whether expert medical testimony is required in a claim based on IIED. In deciphering the scope of the germane Restatement provision, both Defendant and Plaintiff advanced contrasting positions orally and in their brief regarding the necessity of expert medical evidence and the complex area of evidentiary law. As recognized by both parties, this precise issue is a case of first impression[10] in the Virgin Islands, thus, a historical review of the evolution of IIED actions may assist in resolving the contrasting views. Notwithstanding the areas of departure, the parties do agree that the Restatement with its explanatory comments do not explicitly require medical testimony. Consequently, the Court must look outside these confines in order to resolve the issues.

---

miliation, embarrassment, anger, chagrin, disappointment, worry and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed . . . The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge.

It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed. RESTATEMENT (SECOND) OF TORTS § 46 cmt. j (1965).

[9] *k. Bodily harm.* Normally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which in itself affords evidence that the distress is genuine and severe. The rule stated is not, however, limited to cases where there has been bodily harm; and if the conduct is sufficiently extreme and outrageous there may be liability for the emotional distress alone, without such harm. In such cases the courts may perhaps tend to look for more in the way of outrage as a guarantee that the claim is genuine; but if the enormity of the outrage carries conviction that there has in fact been severe emotional distress, bodily harm is not required. RESTATEMENT (SECOND) OF TORTS § 46 cmt. k (1965).

[10] The Court does acknowledge an April 4, 2007 decision by the Hon. Judge Francis D'Eramo in *Fenton v. C&C Construction and Maintenance Inc., and Hovensa L.L.C.*, 48 V.I. 263 (V.I. 2007), which was limited to the "extreme and outrageous" aspect of a claim for IIED. This matter however, raises the broader issue of whether medical testimony is required as a threshold matter in order for the claim to survive.

Ironically, Plaintiff and Defendant have cited a number of cases supporting their propositions in reference to the medical evidence question, particularly the laws of Pennsylvania and New Jersey. Defendant relies upon *Bolden v. SEPTA*, 21 F.3d 29 (3d Cir. 1994), for the proposition that in an action for IIED expert medical testimony is required. In *Bolden*, the U.S. Court of Appeals for the Third Circuit compared claims of emotional distress brought pursuant to the Restatement versus claims for alleged civil rights violations brought under 42 U.S.C. § 1983. Specifically, within the context of § 1983 civil rights cases, the Court held that expert medical evidence is not required in proving emotional distress. *See Bolden*, 21 F.3d at 36. Rationalizing that emotional distress claims arising under the Restatement provisions as opposed to those claims arising under § 1983 are different, the Court held that, to the extent the former is state-specific and the latter arises by virtue of an alleged constitutional violation, requiring the same level of proof for both would produce inconsistent results, obliterating the universal protection of civil liberties afforded by the Constitution. *See generally Bolden*, 21 F.3d at 35. Notwithstanding, the Court did note that, "under Pennsylvania law, expert medical evidence must be presented before a plaintiff can recover for intentional infliction of emotional distress." *Id.* (emphasis added). Since Pennsylvania has not expressly adopted § 46, the blanket rule announced in *Bolden* that expert medical testimony is required in IIED actions is not controlling. Therefore, this Court must seek further guidance.

Separate and apart from whether Pennsylvania has adopted the RESTATEMENT § 46, precedence has shown that Pennsylvania is much more restrictive in IIED claims than the Restatement. *See generally Hoy v. Angelone*, 554 Pa. 134, 151, 720 A.2d 745, 753-754 (1998) (recognizing that Pennsylvania courts have been "chary" regarding recovery for IIED claims); *See also Keystone*, 861 F.2d at 395. Counsel for both parties cite to *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988 (1987), for their respective views in arguing whether or not expert medical testimony is required. *See generally Kazatsky*, 515 Pa. at 185, 527 A.2d 988 ("Previously this Court has acknowledged but has never had occasion to specifically adopt section 46 as the law in Pennsylvania"). The Court in *Kazatsky* concluded that, ". . . if section 46 of the RESTATEMENT is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by

competent medical evidence." *Id.* at 197, 527 A.2d at 995 (*Emphasis Added*); *see also Hoy,* 554 Pa. at 151, 720 A.2d at 754 (acknowledging that Pennsylvania has not "expressly adopted" RESTATEMENT § 46, but noting the *Kazatsky* decision); *see generally Williams v. Guzzardi,* 875 F.2d 46 (3d Cir. 1989) (construing *Katzaksky* ". . . as limiting the scope of liability by requiring competent medical evidence of causation and severity.). Accordingly, it appears that if Pennsylvania adopted § 46 of the RESTATEMENT, it would attach a higher burden of proof than the provision recites by requiring medical evidence.

Since the evidentiary requirement established by jurisprudence in Pennsylvania is much more stringent than that required under the Restatement, this Court need only look to the four corners of § 46 itself, which coincidentally has been adopted by New Jersey, a state within the purview of this Court's guidance. *Bishop v. Okidata, Inc.,* 864 F. Supp. 416, 427 (D.N.J. 1994). Under New Jersey law, in order to satisfy the "extreme and outrageous" element contained within § 46, ". . . a plaintiff must show that the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Lemke,* 56 F. Supp. 2d at 488; *see also Darboe v. Staples, Inc.,* 243 F. Supp. 2d 5, 19 (S.D.N.Y. 2003) (applying New Jersey substantive law). Furthermore, because the resulting emotional distress must be severe to satisfy the aforementioned test, the issues, as recognized in New Jersey courts, ". . . raises questions of both law and fact," and therefore, must be balanced between the role of the court and the jury as outlined in comment j to § 46. *See Buckley v. Trenton Saving Fund Society,* 111 N.J. 355, 366-368, 544 A.2d 857, 863-864 (1988) (discussing the comments to § 46 regarding the necessary proof in meeting the requisite severity of the emotional distress). With respect to the issue of whether medical testimony is required in proving severity, New Jersey jurisprudence is mostly silent, citing to only the comments following § 46 in iterating the intersecting roles between the court and the jury. *See Buckley,* 111 N.J. at 367, 544 A.2d at 864 (citing to comment j of § 46). However, one unreported decision has held that, "expert testimony is required to support a claim for an injury which is **either** subjective in nature **or** of the sort that its <u>cause and degree of severity</u> <u>cannot be determined by laymen.</u> *See Dondero v. Lenox China,* No. 89-3083, 1990 U.S. Dist. LEXIS 7644 at *6 (D.N.J. June 19, 1990). The

Court further noted that, ". . . claims of emotional distress, including depression, sleep loss, embarrassment and humiliation are encompassed by this category . . . ," thus warranting expert testimony. *Id.* However, generally, "expert medical testimony ordinarily is not required where damage for mental anguish alone is present," which is the sole claim in this case. *See* 43 POF 2d § 10. This is because, "in most cases, from their own experience jurors are aware of the extent and character of the disagreeable emotions that may result from the defendant's conduct, and severe emotional distress may be shown by subjective testimony of the plaintiff." *Id.* To the extent that a few particular displays of Plaintiff's emotionally debilitating distress may be thought of as "subjective", the disjunctive "or" contained within the *Dondero* opinion clearly intended that only those showings of distress that are incapable of being witnessed by laymen call for an expert's diagnosis and opinion.

In this case, the Plaintiff's testimony presented circumstances readily identifiable to laymen as to his emotional distress. During his case-in-chief, Plaintiff's co-workers and girlfriend vividly testified to the severe distress suffered by the Plaintiff, including weight loss[11], frustration, embarrassment, depressed mood, withdrawal and a lack of interest towards his infant son. Moreover, Defendant's attempts in coercing Plaintiff Smith into committing illegal and fraudulent acts under threats of retaliation, including possible loss of his employment at a time when he was the sole "bread winner," were emphasized to the jury as instances of the hostile and fearful work environment he was forced to work under. Periods of physical—weight loss, loss of appetite, headaches, and psychological—fear, depression, withdrawal—manifestations of his distress were presented to the jury, allowing them the freedom to determine whether the distress he suffered met the requisite level of severity. The distress suffered was also readily identifiable to those surrounding Plaintiff in his daily life, and did not require further substantiation from a medical professional, especially given the fact that the symptoms developed in direct proximity with the retaliatory and egregious conduct of Defendant Elias. Of further significance is the fact that if expert medical testimony were required or presented, the Court would have nonetheless been required to instruct the jury that they may

---

[11] There is nothing subjective about this factor nor is weight loss something that can not be determined by laymen in terms of cause or severity.

disregard such testimony if they deemed it appropriate[12]. Therefore, this Court concludes that Plaintiff was not required to present expert medical testimony in order for his claim under IIED to survive. Given the foregoing, the jury could and did find that, Defendant-Employer's retaliation and other egregious acts caused Plaintiff-Employee Smith to suffer severe intentional infliction of emotional distress.

### c. Employer retaliation presumptively meets the extreme and outrageous component for IIED; therefore a judgment as a matter of law, dismissing the action, is unwarranted.

 Contrary to the contention of the defendant, proof of the extreme and outrageous nature of the emotional distress suffered by the plaintiff was established. Within the employer-employee context, the requisite proof to substantiate an emotional distress claim has been cited repeatedly. In *Hoy*, the Court ruled that,

> [i]n light of recovery for the tort of intentional infliction of emotional distress being reserved by the courts for only the most clearly desperate and ultra extreme conduct, we believe that the factor of retaliation is an entirely appropriate consideration when determining the outrageousness of an employer's actions. Retaliatory conduct is typically indicative of discrimination of a more severe nature and usually has a greater detrimental impact upon the victim. Thus, we believe that retaliation is a critical and prominent factor in assessing the outrageousness of an employer's conduct. (*Emphasis Added*).

---

[12] § 14.01. Opinion Evidence—The expert witness. The rules of evidence ordinarily do not permit witnesses to testify as to their own opinions or their own conclusions about important questions in a trial. An exception to this rule exists as to those witnesses who are described as "expert witnesses." An "expert witness" is someone who, by education or by experience, may have become knowledgeable in some technical, scientific, or very specialized area. If such knowledge or experience may be of assistance to you in understanding some of the evidence or in determining a fact, an "expert witness" in that area may state an opinion as to a matter in which he or she claims to be an expert. You should consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves. You should consider the testimony of expert witnesses just as you consider other evidence in this case. If you should decide that the opinion of an expert witness is not based upon sufficient education or experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you should conclude that the opinion is outweighed by other evidence [including that of other 'expert witnesses'], you may disregard the opinion in part or in its entirety. As I have told you several times, you—the jury—are the sole judges of the facts of this case. 1A Fed. Jury Prac. & Instr. § 14.01 (5th ed. 2006) (*Emphasis Added*).

*Hoy*, 554 Pa. at 153, 720 A.2d at 754; *see Cox*, 861 F.2d at 395 ("Indeed, the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee."); *see also Dondero*, 1990 U.S. Dist. LEXIS at *5 ("Where the termination decision is accompanied by a showing of harassment on the part of the employer, however, courts have allowed claims for intentional infliction of emotional distress to go the jury"). Hence, in the case of employee-employer IIED claims, a distinct, albeit broader, approach is taken. Here, during Plaintiff's case-in-chief, the Jury became familiar with the retaliatory and harassing nature of Defendant's behavior, and as a result, found that Plaintiff did suffer from distress due to the intentional, outrageous and extreme wrongdoing perpetrated by his employer.

## B. Defendant's Motion For A New Trial Likewise Should Not Be Granted

The Defendant alternatively maintains that it is entitled to a new trial because: (1) the evidence at trial was improperly admitted and prejudicial; (2) the jury's verdict was excessive and against the weight of the evidence; and (3) the jury was improperly instructed.

### 1. Standard of Review for Motion for New Trial

A motion for new trial is governed by SUPER. CT. R. 135[13], which provides:

> The court may grant a new trial to a defendant if required in the interest of justice. The court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for new trial based on the ground of newly discovered evidence may be

---

[13] A motion for new trial is also governed by FED. R. CIV. P. 59, which provides, in pertinent part: "(a) GROUNDS. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment."

made only before, or within two years after, final judgment. A motion for new trial based on other grounds shall be made within 10 days after finding of guilty, or within such further time as the court may fix during the 10-day period. In no event shall this rule be construed to limit the right of a defendant to apply to the court for a new trial on the ground of fraud or lack of jurisdiction.

Though left to the sound discretion of the trial court, a new trial may be granted for two separate but distinct reasons. *Government of the Virgin Islands v. Baron*, 48 V.I. 88 (D.V.I. 2006). In the first instance, a new trial may be granted "'if, after weighing the evidence, [the Court] determines that there has been a miscarriage of justice.'" *Id.* (citing *Government of the Virgin Islands v. Commissiong*, 706 F. Supp. 1172, 1184 (D.V.I. 1989)). This occurs where the verdict was irrational or that the jury's verdict was "against the weight of the evidence." *Id.* In the second instance, a new trial is warranted where a trial error, within "'reasonable probability'" had a "substantial influence" on the jury verdict. *Id.* Furthermore, in reviewing the arguments advanced for a new trial, under Rule 59, the applicable standard varies. *Virgin Islands Maritime Services, Inc.*, 978 F. Supp. at 647 (when a trial is sought on grounds that the verdict is against the weight of the evidence, the court must tread lightly in order to carefully balance the role of the court versus the role of the jury as fact-finder); *Henry v. Hess Oil Virgin Islands Corporation*, 163 F.R.D. 237, 243-245, 33 V.I. 163 (D.V.I. 1995) (trial court has wide discretion when motion for new trial is based on reasons other than that the verdict was against the weight of the evidence, specifically when a party claims that evidence presented at trial was inadmissible). Therefore, there is no fixed standard and the trial court is afforded sound discretion. *See Lind v. Schenley Industries, Inc.*, 278 F.2d 79, 88 (3d Cir. 1960) (citing *Commercial Credit Corp v. Pepper*, 187 F.2d 71, 75-76 (5th Cir. 1951); *see also Virgin Island Maritime Services, Inc.* 978 F. Supp. at 647.

### a. Evidence at trial was properly admitted and was non-prejudicial; therefore, a new trial is not warranted.

 As an alternative argument to judgment as a matter of law, Defendant argues that evidence introduced by Plaintiff at trial was improperly admitted and prejudiced the jury, thus warranting a new trial. The contested evidence included references to the improper maintenance

of Defendant's vehicles, actions toward employees other than Plaintiff, and other generalized comments regarding the Defendant's activities in running its business. This type of evidence, Defendant contends, distracted the jury from the real issues of the case, and thus was prejudicial and irrelevant, under FED. R. EVID. 402[14].

In alleging that Plaintiff presented unfair and prejudicial evidence of acts outside the purview of an IIED action that were not specifically targeted at Plaintiff, Defendant argues that the evidence presented was irrelevant in establishing Plaintiff's claims and that the conduct alleged was not in and of itself the cause of Plaintiff's emotional distress. At trial, Plaintiff presented evidence and testimony to the effect that Defendants engaged in unlawful liability avoidance tactics on a broad scale and because Plaintiff would not conspire with them to commit insurance fraud and would not participate in furthering Defendant's criminal scheme, he was subjected to retaliatory action. In weighing the contrasting arguments, the Court finds that the evidence presented at trial was within the allowable scope of the jury's consideration, particularly in view of Plaintiff's burden to show "intent" on the party of the Defendants, as well as to support "punitive" and a need to deter outrageous conduct.

Defendant also argues that certain witnesses were not identified prior to trial either during or even after discovery, and therefore, should have been excluded. The witnesses to which Defendant refers are Ife Richards, Michael Malone and Layton Stridiron. This argument lacks merit as these witnesses were identified in the context of answers to interrogatories and deposition testimony. Accordingly, Defendants were not "surprised," ergo a new trial is not warranted.

### b. The Jury's verdict was not excessive nor against the weight of the evidence, therefore, a new trial is not warranted.

As another ground for a new trial, Defendant argues that the jury's verdict was excessive and against the weight of the evidence. The

---

[14] **Rule 402. Relevant evidence generally admissible; irrelevant evidence inadmissible.** All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible. FED. R. EVID. 402.

$350,000 punitive damage award, Defendant contends, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as made applicable to the Territory of the Virgin Islands through § 3 of the Revised Organic Act of 1954, as amended, since the amount was over twice the amount awarded in compensatory damages. Moreover, the amount was excessive in light of comparable employer-employee related suits.

 The Restatement (Second) of Torts establishes the requirement for an award of punitive damages. This provision states:

1. Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.

2. Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

RESTATEMENT (SECOND) OF TORTS § 908 (1979).

 In determining the excessiveness of a particular award, the U.S. Supreme Court's decision in *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003), provides some useful guidance. First and foremost, it must be noted that the purpose of punitive awards are aimed at achieving deterrence and retribution. *State Farm*, 538 U.S. at 416, 123 S. Ct. at 1519. In *State Farm*, the Court upheld its decision in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996), which instructed courts reviewing punitive damage awards to consider, under *de novo* review, three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Id.* at 418, 123 S. Ct. at 1520.

 Applying these guideposts to the facts under consideration, this Court does not find a basis to set aside the jury award of $350,000 in punitive damages. Under the first guidepost, the Supreme Court has stated that, "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm*, 538 U.S. at 418, 123 S. Ct. at 1521 (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)). In ascertaining the requisite degree of defendant's conduct, a court should consider certain mutually exclusive factors, each one alone sustaining an award yet the absence of all weighing against an award. Thus, a court may consider whether: ". . . the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others; the target of the conduct involved repeated action or was an insolated incident; and whether the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.* (citing *Gore*, 517 U.S. at 576-577, 116 S. Ct. 1589). The *State Farm* Court further noted that compensatory damages are presumably for the purpose of making a plaintiff whole for the injuries suffered as a result of the defendant's activities, therefore, punitive damages are warranted in circumstances where further monetary penalties are called upon to punish and deter defendant from continuing in the same course of action. *Id.* In this case, Defendants' activities were deceitful to not only the Plaintiff but to members of the community at large; the conduct of Defendants were not a result of mere accident, but of intentional wrongdoing; and Defendants demonstrated they were more concerned with their financial liabilities as a business as opposed to the financial and emotional well-being of its employees and remaining within the constraints of the law. Therefore, the jury's finding of punitive damages must stand as they have essentially spoken to the effect that the Defendant should be punished and hopefully deterred from further fraudulent activities through the imposition of a monetary penalty.

 Under the second guidepost, the Court reiterated that it has not been willing to set defined ratio limitations between the requisite harm to a plaintiff and a punitive damages award. *State Farm*, 538 U.S. at 424, 123 S. Ct. at 1524. Despite this, the Court has held that, "[its] jurisprudence and the principles it has now established demonstrate . . . that, in practice, few awards exceeding a single-digit ratio between

85

punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* at 425, 123 S. Ct. at 1524. The Court also noted that, "while these ratios are not binding, they are instructive." *Id.* In this case, the punitive damage award of $350,000 represented approximately ten percent[15] (10%) of the total equity of Defendant's business, which was pegged at trial with being approximately 5.4 million dollars. Moreover, the $350,000 figure was slightly more than twice the compensatory damages award, squarely within the "single-digit ratio" limitation. Accordingly, the punitive damage award satisfied due process.

The third guidepost weighs ". . . the disparity between the punitive damages award and the 'civil penalties authorized or imposed in comparable cases.'" *Id.* at 428, 123 S. Ct. at 1526 (citing *Gore*, 517 U.S. at 575, 116 S. Ct. 1589). Under Virgin Islands' law, specifically V.I. CODE ANN. tit. 10, § 7[16], as Defendant cites, an individual who is discriminated against in the workplace on the basis of race would be entitled to punitive damages in the amount not to exceed $5,000.00. *See* V.I. CODE ANN. tit. 10, § 7(1). However, what Defendant neglected to note or perhaps has overlooked is the fact that each and every violation of the provisions governing racial discrimination counts as a separate offense warranting

---

[15] Merchants Market's Certified Public Accountant prepared financial statements reflecting the total liabilities and equity of the business. (Pl.'s Ex. 54-62).

[16] V.I. CODE ANN. tit. 10, § 7 reads: Penalties for violations. Whoever, whether as owner, officer, manager, agent, or employee of any business or industrial establishment, labor organization, place of public accommodation, resort or amusement, or club, violates any of the provisions of this chapter, shall, <u>for each and every such violation</u>, be—

 (1) liable in actual damages, and in addition, thereto, to punitive damages not to exceed $5,000 to be recovered in a civil action by the person aggrieved thereby or by any resident of the United States Virgin Islands to whom the person aggrieved may assign his cause of action; and

 (2) fined not more than $2,000 or imprisoned not more than one year, or both. The owner or owners of any business where an offense mentioned herein has been committed by his or its officer, manager, agent or employee, such owner or owners shall be severally and/or jointly liable with the offender for the actual and punitive damages provided for herein.

<u>Each day of violation shall constitute a separate offense.</u>

Neither penalty nor action listed above, in subdivisions (1) and (2) of this section, shall be a bar to the other, and recovery or action in one shall not preclude action or recovery in the other or in any other lawful remedy otherwise possessed by an aggrieved person.

Any person who conspires with another person to violate any of the provisions of this chapter shall be liable as a principal violator and subject to all of the penalties above. (*Emphasis Added.*)

punitive damages. *See* V.I. CODE ANN. tit. 10, § 7(2). Therefore, the amount of money is not as nominal as Defendant suggests. Applying the standard of this provision to the facts here, had Plaintiff suffered racial discrimination, for example, just one year consistently, the amount of punitive damages that could be awarded to him would be ($5,000.00 x 365 days) $1,825,000.00. Therefore, Defendant's comparison of a claim for IIED versus a claim of invidious discrimination lacks logic and understanding. Defendant also cites to federal law, which the Court declines to address as Plaintiff is not seeking redress under federal law but rather Virgin Islands' law. Thus, Defendant's assertion that the punitive damages award in this case exceeded those in comparable cases is unsupported and hence without merit.

 Citing to the above mentioned guideposts, Defendant places significant reliance on *State Farm* for the proposition that the underlying action was used as a platform to uncover the Defendant's business practices and establish a general sense of liability based, not on outrageous conduct directed at the Plaintiff, causing severe emotional injury, but rather on conduct that should be punished for the greater public interest. This reliance, however, is misplaced as the factual scenario presented in *State Farm* is directly in contrast with that presented in this case. In *State Farm*, the plaintiff, in hopes of retribution, presented evidence that the defendant had engaged in an insurance scheme in meeting corporate demands and fiscal goals on a national level. *State Farm*, 538 U.S. at 420, 123 S. Ct. at 1521. The Court held in the context of determining the proper amount of punitive damages, a defendant's conduct not specifically directed at nor meeting the requisite nexus in harming a plaintiff, may not be considered. *See generally State Farm*, 538 U.S. at 420-424, 123 S. Ct. at 1521-1524. Moreover, *State Farm* dealt with a multinational corporation with offices throughout the U.S. Therefore, as Plaintiff correctly recognizes, *State Farm* is inapplicable. Here, the nexus requirement has been met since the Plaintiff was subjected to employee reprisal for his failure to acquiesce in Defendants' attempt at evading liability and to assume personal liability over an accident which occurred within the scope of Plaintiff's employment, which would properly invoke the doctrine of "respondeat superior," leaving Defendant financially responsible for damage to Shermain Lawrence. *A fortiori*, the jury's verdict and award of punitive damages

was entirely reasonable in light of the relevant law as applied to the pertinent facts.

### c. The Jury was properly instructed; therefore a new trial is not warranted.

 The specific procedure for requesting and objecting to jury instructions is outlined under FED. R. CIV. P. 51[17]. Under the Rule, a timely

---

[17] Rule 51. Instructions to Jury: Objections; Preserving a Claim of Error.
(a) REQUESTS.

(1) A party may, at the close of the evidence or at an earlier reasonable time that the court directs, file and furnish to every other party written requests that the court instruct the jury on the law as set forth in the requests.

(2) After the close of the evidence, a party may:

(A) file requests for instructions on issues that could not reasonably have been anticipated at an earlier time for requests set under Rule 51(a)(1), and

(B) with the court's permission file untimely requests for instructions on any issue.

(b) INSTRUCTIONS. The court:

(1) must inform the parties of its proposed instructions and proposed action on the requests before instructing the jury and before final jury arguments;

(2) must give the parties an opportunity to object on the record and out of the jury's hearing to the proposed instructions and actions on requests before the instructions and arguments are delivered; and

(3) may instruct the jury at any time after trial begins and before the jury is discharged.

(c) OBJECTIONS.

(1) A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection.

(2) An objection is timely if:

(A) a party that has been informed of an instruction or action on a request before the jury is instructed and before final jury arguments, as provided by Rule 51(b)(1), objects at the opportunity for objection required by Rule 51(b)(2); or

(B) a party that has not been informed of an instruction or action on a request before the time for objection provided under Rule 51(b)(2) objects promptly after learning that the instruction or request will be, or has been, given or refused.

(d) ASSIGNING ERROR; PLAIN ERROR

(1) A party may assign error:

(A) an error in an instruction actually given if that party made a proper objection under Rule 51(c), or

(B) a failure to give an instruction if that party made a proper request under Rule 51(a), and—unless the court made a definitive ruling on the record rejecting the request—also made a proper objection under Rule 51(c).

objection must be raised by a party on the record stating with specificity the matter upon which an objection is made and the legal grounds thereof, in order to preserve the issue on appeal. *See Bostic v. Smyrna School District*, 418 F.3d 355, 359 (3d Cir. 2005) (citing FED. R. CIV. P. 51(c)(1), 51(d)(1)). As recognized within this jurisdiction, "generally, a party who does not clearly and specifically object to a charge he believes to be erroneous waives the issue on appeal." *Alexander v. Riga*, 208 F.3d 419, 426 (3d Cir. 2000) (citing *Simmons v. Philadelphia*, 947 F.2d 1042, 1078 (3d Cir. 1991), *cert. denied*, 503 U.S. 985, 112 S. Ct. 1671, 118 L. Ed. 2d 391 (1992)). Notwithstanding, an objection which has not been preserved may be reviewed for plain error. *See Bostic*, 418 F.3d at 359 (citing FED. R. CIV. P. 51(d)(1)(A), 51(d)(1)(B), 51(d)(2)). Under this plain error review, a verdict will be overturned only when a fundamental and highly prejudicial error occurred, or where the instructions fail to provide the jury with adequate guidance in assessing a fundamental question, and a miscarriage of justice would result from this Court's failure to consider the error in issue. *See id.* Plain error review is discretionary that courts have only exercised sparingly. *See Alexander*, 208 F.3d at 426 (citing *Simmons*, 947 F.2d at 1078). Finally, "the issue of whether a jury instruction misstates the proper legal standard is subject to plenary review." *Alexander*, 208 F.3d at 426 (citing *Hopp v. Pittsburg*, 194 F.3d 434, 440 (3d Cir. 1999)).

Defendant cites four instructional errors supporting a new trial. First, Defendant contends that the Court failed to give proper curative instructions for the purpose of informing the jury that only actions directed at Plaintiff could be considered in determining the nature of the outrageous conduct alleged. Second, Defendant argues that the Court failed to instruct Plaintiff's duty to mitigate damages. Third, Defendant argues that the Court erred in submitting to the jury Plaintiff's instruction as to what actions constitute outrageous conduct. Finally, the Defendant argues that the Court erred in submitting to the jury Plaintiff's instruction as to what constitutes severe or extreme emotional distress.

■■■ In the context of the alleged errors here, Defendant first contends that the jury should have been given a curative instruction that the

(2) A court may consider a plain error in the instructions affecting substantial rights that has not been preserved as required by Rule 51(d)(1)(A) or (B).—Amended Mar. 2, 1987, eff. Aug 1, 1987; Mar. 27, 2003, eff. Dec. 1, 2003.

conduct complained of must by itself have caused the severe emotional distress. As previously noted, the actions by Defendant in attempting to persuade Plaintiff to engage in a fraudulent insurance scheme or face unprofessional and unethical consequences in the event of his refusal, represented specific conduct directed towards Plaintiff. Despite the fact that there may have other references where Defendant engaged in questionable activity within the scope of the business, a curative instruction was not warranted since these other points of contention only went to establish that Defendant's conduct towards Plaintiff was deliberate, purposeful, and unmistaken. However, had a curative instruction been required, errors in the admissibility of evidence are reviewed for abuse of discretion and a reversal is not warranted where the complained of error was harmless. *See Poleon v. Government of the Virgin Islands*, 184 F. Supp. 2d 428, 434 (D.V.I. 2002). Therefore, the Court finds that even if such an instruction was essential the lack thereof could hardly be deemed as an abuse of discretion, especially considering the nature of the evidence in relation to Plaintiff's complained of emotional distress.

██ Next, Defendant argues that Plaintiff had a duty to mitigate damages and an instruction to that effect should have been given to the jury. Defendant argues that under *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979), an instruction to the jury on mitigation of damages was necessary to support a defensive theory of the evidence. Though Defendant properly recognizes that in *Chuy* an instruction on mitigating damages was given, the Third Circuit did not specifically mandate or cite to cases requiring victims of IIED to seek medical attention in alleviating their distress. *See Chuy*, 595 F.2d at 1276. Therefore, although an instruction on mitigating damages was requested, such an instruction was not mandated.

██ Defendant also argues that the Court erred in submitting to the jury Plaintiff's instruction on what conduct qualifies as outrageous. The alleged error is complained of on two grounds: first, that recklessness is not encompassed under the exception to the WCA's exclusivity provision; and second, that the instruction necessarily drew conclusions of fact impinging upon the jury's domain. As previously explained, the exclusivity provision of the WCA exempts any intentional conduct by an employer from the confines of the WCA, whereby an employee can seek relief apart from workers compensation. Under § 46, intent and

recklessness are synonymous for purposes of establishing liability under an IIED theory. *See Chuy*, 595 F.2d at 1275 ("Intentionally to propagate a falsehood, the natural and probable consequences of which will be to cause the plaintiff emotional distress, is equivalent, in the language of the Restatement's comment i, to the 'deliberate disregard of a high degree of probability that the emotional distress will follow.'"). In *Eddy*, the Court required that for a claim to go outside the bounds of the WCA, an employer must have an "actual, specific and deliberate intention to cause injury," however, in that case, which Defendant places much reliance, there was a situation where the emotional distress followed a physical manifestation of injury. *See Eddy*, 369 F.3d at 232-235. In the case at bar however, we have a situation where emotional distress occurs in the absence of any physical injury. To this extent, *Eddy* is inapplicable, because a claim for IIED, which is recognized as an intentional tort, can come as a result from not only a specific intention to inflict, but also recklessness to the degree as outlined in comment i. Therefore, the Court's instruction incorporating recklessness was proper as a matter of law.

▮ Defendant's claim that the instruction on outrageousness made conclusions of facts that should have been left for the jury to decide must similarly fail. As admitted during trial, the three factual details contained in the instruction, specifically: Defendant's request to Plaintiff to commit perjury, to misrepresent that he was not in the course and scope of his employment at the time of the accident, and Defendant's removal of Plaintiff from the position of driver, were all matters conceded to during the trial. Therefore, whether the conduct occurred was not an issue, but rather the narrower issue of whether such conduct was "outrageous" within the scope of IIED. Thus, as a matter of law, the instruction was not in error as the jury remained the final arbiter of whether the conduct described was in fact outrageous.

Lastly, Defendant finds error in the instruction given to the jury on the definition of severe emotional distress. This contention also fails, as the Court issued an instruction in accordance with comments j and c of § 46 on what constitutes severe emotional distress. Ergo, as a matter of law, the instruction was not in error.

In view of the foregoing, the alleged instructional errors are without merit and do not warrant a new trial.

## V. CONCLUSION

A judgment as a matter of law is not warranted because: (1) an exception to the Workers' Compensation Act's exclusivity provision exists in the case *sub judice* since the complaint alleged and the jury found that the conduct of the employer represented an actual, specific and deliberate intent to injure; (2) the RESTATEMENT (SECOND) OF TORTS, § 46 (1965) does not require medical expert testimony to recover on a claim of intentional infliction of extreme emotional distress; (3) that the extreme and outrageous components of the claim were met *inter alia* by the retaliatory and criminal nature of the conduct of the defendant. Furthermore, a new trial is also not warranted since: (1) the evidence at trial was properly admitted and non prejudicial; (2) the verdict was neither excessive nor against the weight of the evidence; and (3) the jury was properly instructed. Accordingly, the Defendant's Motion for Judgment as a Matter of Law or Alternatively for a New Trial, pursuant to FED. R. CIV. P. 50 and SUPER. CT. R. 135, is Denied.